## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

LATISA CRISTINE MICHEAUX, et al.,

     **Plaintiffs,**

v.

AMERICAN CREDIT ACCEPTANCE, et al.,

     **Defendants.**

**Case No. 24-1102-DDC-BGS**

## MEMORANDUM AND ORDER

Plaintiffs Latisa Cristine Micheaux and Margaret Burris[1] filed this lawsuit against defendants American Credit Acceptance (ACA) and CarMax. The two plaintiffs assert issues in their purchase and financing of a vehicle, which defendants repossessed. Three motions—among the many currently pending—are key to this Order: Plaintiffs' Motions to Recuse (Doc. 91; Doc. 94) and defendant ACA's Motion to Compel Arbitration (Doc. 44). The court evaluates, first, whether the undersigned must recuse. Then, it addresses whether the parties must arbitrate their dispute, along with a few other arbitration-related matters and motions. The court denies plaintiffs' recusal motions and grants defendants' arbitration motion. The Order begins with some helpful background.

---

[1]     Because plaintiffs appear pro se, the court construes their pleadings liberally and holds them "to a less stringent standard than formal pleadings drafted by lawyers." *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the court can't assume the role of plaintiffs' advocate. *Id.* Simply put, the court can't "supply additional factual allegations to round out [the pro se litigant's filing] or construct a legal theory on [plaintiffs'] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

## I.    Background

### *Car Purchase Gone Wrong*

Plaintiffs allege they purchased a vehicle from CarMax in January 2024.[2]  Doc. 21 at 4 (Am. Compl. ¶ 3).  Somewhere along the way, the purchase went awry.  Plaintiffs allege that CarMax forged plaintiffs' signatures on the title.  *Id.*  And they allege that American Credit Acceptance denied plaintiffs credit.  *Id.* at 5 (Am. Compl. ¶ 3).  What's more, plaintiffs allege, both defendants improperly used their social security numbers beyond the scope of their consent. *Id.*

Plaintiffs also allege that CarMax "pressured" them to grant the company "power of attorney during the purchase process."  *Id.*  And plaintiffs "immediately sent a POA revocation due to subsequent actions[.]"  *Id.*  Then, plaintiffs told CarMax that they would register the vehicle themselves.  *Id.*  But a "police officer informed Plaintiffs that the vehicle was registered in Plaintiffs' names without consent."  *Id.*  After that, someone named Teagan Menly threatened to repossess the vehicle.  *Id.*  The parties had entered a Retail Installment Contract when the vehicle purchase occurred.  Doc. 44-2 (Def. Ex. A-1).  But plaintiffs later tried to rescind the agreement.  Doc. 21 at 5 (Am. Compl. ¶ 3).  CarMax ignored plaintiffs' attempt to rescind.  *Id.* And, plaintiffs allege, American Credit Acceptance "failed to provide proof" that plaintiffs possessed the vehicle and the debt was valid.  *Id.*

According to plaintiffs, defendants eventually repossessed the vehicle.  Doc. 52 at 1 ("By unilaterally repossessing the vehicle while an active dispute was ongoing, ACA violated the

---

[2]        The Retail Installment Contract indicates the vehicle purchase occurred in February 2024.  Doc. 44-2 at 2 (Def. Ex. A-1).  And plaintiffs' own attachments to the Amended Complaint indicate the sale occurred in February, as well.  Doc. 21 at 11 (Am. Compl.) (Pl. Ex. A-1).

contract[.]").  The Retail Installment Contract contained an arbitration clause.  Doc. 44-2 at 4

(Def. Ex. A-1).  It reads, in relevant part:

> For purposes of this Arbitration Provision, references to "we," "us" and "our" mean the Seller, including its respective subsidiaries, affiliates, agents, employees and officers, or anyone to whom the Seller transfers its rights under the Contract.
> **IF YOU OR WE CHOOSE ARBITRATION, THEN ARBITRATION SHALL BE MANDATORY, AND:**
>
> - **ANY CLAIM WILL BE DECIDED BY ARBITRATION AND NOT IN COURT OR BY A JURY TRIAL.**
> - **DISCOVERY AND RIGHTS TO APPEAL ARE LIMITED BY THE ARBITRATION RULES OF THE ARBITRATION ADMINISTRATOR.**
> - **YOU GIVE UP YOUR RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF A CLASS IN A CLASS ACTION ("CLASS ACTION WAIVER").**
> - **OTHER RIGHTS THAT YOU OR WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**
>
> **a.  What Claims are Covered.** A "Claim" is any claim, dispute or controversy between you and us that in any way arises from or relates to this consumer credit sale, the purchase you are financing by way of this Contract, the Vehicle and related goods and services that are the subject of the purchase and this Contract, or the collection or servicing of this Contract; **including but not limited to:**
>
> - Initial claims, counterclaims, cross-claims and third-party claims;
> - Disputes based on contract, tort, consumer rights, fraud and other intentional torts (at law or in equity, including any claim for injunctive or declaratory relief);
> - Disputes based on constitutional grounds or on laws, regulations, ordinances or similar provisions; and
> - Disputes about the validity, enforceability, arbitrability or scope of this Arbitration Provision or this Contract, subject to paragraph (f) of this Arbitration Provision.

*Id.* (highlights added by the court).

### *Procedural History*

Plaintiffs filed their lawsuit in June 2024.  Doc. 1.  Thereafter, the court granted plaintiffs

leave to proceed without prepayment of fees—or *in forma pauperis* (IFP) status.  Doc. 24 at 2.

The court conducted the necessary screening of plaintiffs' Amended Complaint under 28 U.S.C.

§ 1915(e).  Doc. 34 (affirming Report and Recommendation screening Amended Complaint); 28

U.S.C. § 1915(e) ("[T]he court shall dismiss the case at any time if the court determines that

. . . the action . . . fails to state a claim on which relief may be granted [in IFP cases].").

In its Order, the court directed the Clerk of the Court to issue a summons and the United

States Marshals Service to serve defendants.  Doc. 34 at 15.  Once served, defendant ACA

requested an extension of time to answer or otherwise plead.  Doc. 37 at 1 (Clerk's Extension of

Time).  But defendant CarMax was silent.  Plaintiffs filed two Motions for Default Judgment

(Doc. 39; Doc. 40) against CarMax.  And then CarMax moved for an extension of time to

answer.  Doc. 41.  Reviewing the parties' filings, the court concluded CarMax's failure to timely

respond to the Amended Complaint was "excusable neglect[.]"  Doc. 54.  It also concluded that

plaintiffs weren't prejudiced unduly by the delay. *Id.* So, the court granted CarMax's motion to extend time and denied plaintiffs' motions for default judgment under the Fed. R. Civ. P. 6(b)(1)(B) standard. *Id.*

### Motion to Compel Arbitration

As their first substantive filing, defendant ACA moved to compel arbitration. Doc. 44. Later, defendant CarMax moved to join that motion. Doc. 69. And plaintiffs met ACA's motion to compel with their own unnecessary motion asking the court to deny the motion to compel arbitration. Doc. 72. Meanwhile, the parties engaged in extensive motion practice. The court eventually stayed response deadlines to any non-arbitration related motions pending its ruling on the Motion to Compel Arbitration (Doc. 44). Doc. 77. At the time of that Order, 10 other motions were pending. Since then, the parties have filed another 11 motions.

### Motions to Recuse

As if this case's airspace wasn't full enough, there's also a dispute about the undersigned's previous affiliation with defense counsel's firm—Stinson LLP. Approaching the case with abundant caution, the undersigned judge issued an Order Regarding Potential for Judicial Disqualification (Doc. 67). Defendant ACA's attorneys are from Stinson LLP—the undersigned's former law firm. So, following the undersigned's standard practice, the court disclosed that connection—though it viewed the connection as a tenuous one here. As the undersigned judge explained when entering the notice, "I have not practiced with that law firm for more than 10 years and, in any event, I do not now share nor have I ever shared a personal friendship with that firm's attorneys appearing in this case." Doc. 67 at 1. The undersigned concluded the governing ethical standards didn't warrant judicial disqualification under the circumstances. *Id.* But, acknowledging that the parties "often know things about a lawsuit" that

the undersigned might not know, the undersigned issued the Order. *Id.* The Order directed that the parties anonymously could object to the Order—the Chief Judge would resolve any such objections. Doc. 66 at 2. Chief Judge Eric F. Melgren reviewed and overruled an anonymous objection. *See generally* Doc. 97. He concluded the objection didn't "set forth any basis for recusal." *Id.* at 2. Before Judge Melgren's Order, plaintiffs filed two recusal motions. Doc. 91; Doc. 94.

The court takes up, first, whether the undersigned judge must recuse.

## II.     Motions to Recuse & Objection to Magistrate Judge's Order (Docs. 91, 94, 105)

Two statutes govern judicial recusal, 28 U.S.C. §§ 144 and 455. *Burleson v. Sprint PCS Group*, 123 F. App'x 957, 959 (10th Cir. 2005). Plaintiffs ask the undersigned to recuse under both statutes.[3] Doc. 91 at 1 (moving for recusal under §§ 144 and 455(a)); Doc. 94 at 2 (moving for recusal under §§ 455(a) and 455(b)(2)).

---

[3]     Plaintiffs also ask Magistrate Judge Severson to recuse. Doc. 91 at 1. Magistrate Judge Severson already has resolved the motion as it applies to her. Doc. 104. Plaintiffs quickly objected to Judge Severson's Order. Doc. 105. They argue Judge Severson's Order violated the Fifth Amendment's Due Process Clause, 28 U.S.C. § 455, and an "ethical cannon[.]" *Id.* at 2. That's because, plaintiffs argue, "[a] judge cannot lawfully or constitutionally adjudicate a motion challenging their own impartiality." *Id.* What's more, they assert, a magistrate judge can't issue a dispositive ruling without all parties' consent. *Id.* (citing 28 U.S.C. § 636(b)(1)). Neither of those arguments are faithful to the governing law.

For one, "[f]ederal law is clear that a motion for recusal must be decided by the judge whose recusal is requested." *Cruz v. Carrasco*, No. 09-CV-335 WJ/LFG, 2010 WL 11619036, at *2 (D.N.M. Nov. 2, 2010) (collecting cases); 28 U.S.C. § 455 ("Any . . . magistrate judge of the United States shall disqualify [*herself*.]"); *Waterman v. Groves*, No. 18-3092-JWB-KGG, 2020 WL 4045199, at *3 (D. Kan. July 17, 2020) ("Section 455 clearly contemplates that decisions with respect to disqualification should be made by the judge sitting in the case, and not by another judge." (internal quotation marks and citation omitted)); *id.* (district judge evaluating motion for magistrate judge to recuse in rare circumstance where magistrate judge already ruled two prior recusal motions).

For another, a recusal motion is non-dispositive. *Sperry v. Corizon Health, Inc.*, No. 18-3119-EFM-ADM, 2020 WL 5057584, at *1 n.1 (D. Kan. Aug. 27, 2020). The court thus concludes Judge Severson's Order ruling on the motion seeking her own recusal isn't "clearly erroneous" or "contrary to law." Fed. R. Civ. P. 72(a) (outlining standard for district judge review of non-dispositive order by magistrate judge); Doc. 104 at 3 (Judge Severson denying motion because conclusory allegations and unfavorable rulings aren't bases for recusal (citing *Ward v. Wesley Med. Ctr., LLC*, No. 23-1091-HLT-

### A.     § 144 Disqualification

For disqualification under § 144, the moving party must submit an affidavit showing bias and prejudice.  *Burleson*, 123 F. App'x at 959–60 (citing *Glass v. Pfeffer*, 849 F.2d 1261, 1267 (10th Cir. 1988)).  The bias and prejudice must be personal, extrajudicial, and identified by "facts of time, place, persons, occasion, and circumstances."  *Id.* at 960 (quoting *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987)).  The court will accept these facts as true, but they must present more than "conclusions, rumors, beliefs, and opinions."  *Id.* (quotation cleaned up).  Without a sufficient affidavit showing bias or prejudice, plaintiffs can't support a request for recusal.  28 U.S.C. § 144.  Under the statute, the affidavit must "be accompanied by a certificate of counsel of record stating that it is made in good faith."  *Id.*

Here, plaintiffs merely have filed their motion.  Doc. 91.  They haven't attached an affidavit or certificate of good faith.  But plaintiff Latisa Cristine Micheaux signed the motion and declared its truth under penalty of perjury.  Doc. 91 at 4; *see also Blaylock v. Tinner*, No. 13-2045-EFM, 2013 WL 1491207, at *2 (D. Kan. Apr. 11, 2013) (explaining that pro se plaintiff failed to provide affidavit setting forth reasons for bias, but the court contemplated "constru[ing] his motion for disqualification as an affidavit").  The court thus liberally construes the signed and sworn motion as an affidavit and certificate of good faith.  *See Hall*, 935 F.2d at 1111 (recognizing rule that court may construe complaint "as an affidavit if it alleges facts based on the plaintiff's personal knowledge and has been sworn under penalty of perjury" in summary judgment context); *Escalante v. Escalante*, No. 23-2491-JWB, 2024 WL 459837, at *2 (D. Kan. Feb. 6, 2024) (construing pro se plaintiff's affidavit as motion to disqualify); *Hargrave v. Chief Asian, LLC*, No. 10-CV-006-JHP-TLW, 2010 WL 5209256, at *1, *1 n.2 (N.D. Okla. Dec. 16,

---

BGS, 2024 WL 580149, at *4 (D. Kan. Feb. 13, 2024)).  The court thus denies plaintiffs' Objection (Doc. 105).

2010) (construing "Certificate of Defendant" made "under penalty of perjury" as affidavit for purposes of sufficiency analysis and concluding pro se defendant qualified as "counsel of record" sufficient for his certificate of good faith to comply with § 144 (quotation cleaned up)).

**B.    § 455 Disqualification**

Alternatively, under § 455, a judge must disqualify himself "in any proceeding in which his impartiality might reasonably be questioned."  28 U.S.C. § 455(a).  He also must disqualify himself where "he served as lawyer in the matter in controversy" or worked with a lawyer who was "a lawyer [in] the matter" during the judge's association with that lawyer.  § 455(b)(2).  The test for determining impartiality is an objective one, based on a judge's "outward manifestations and reasonable inferences drawn therefrom."  *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995) (citation omitted).  Under § 455, "factual allegations need not be taken as true, and the test is whether 'a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality.'"  *Glass*, 849 F.2d at 1268 (quoting *Hinman*, 831 F.2d at 938).  Section 455 "does not require recusal based only on assumptions about a judge's beliefs that are not substantiated by the facts of record."  *In re McCarthey*, 368 F.3d 1266, 1269–70 (10th Cir. 2004) (first citing *Nichols*, 71 F.3d at 351; and then citing *Bryce v. Episcopal Church*, 289 F.3d 648, 659–60 (10th Cir. 2002)).  The court asks "how things appear to the well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person."  *United States v. Jordan*, 49 F.3d 152, 156 (5th Cir. 1995) (citing *In re Mason*, 916 F.2d 384, 386 (7th Cir. 1990)).

"The decision to recuse is committed to the sound discretion of the district court."  *United States v. Burger*, 964 F.2d 1065, 1070 (10th Cir. 1992) (citing *Hinman*, 831 F.2d at 938).  As the moving party here, plaintiff bears the substantial burden to demonstrate that the judicial officer

assigned to this case is not impartial.  *Id.*  The court takes up both motions, together, below.  It concludes that plaintiffs have failed to meet their burden under either § 144 or § 455.

### C.    Analysis

Plaintiffs' attempts to show actual bias under § 144 and an objective question of impartiality under § 455(a) come up short.  Plaintiffs present hordes of speculative and conclusory allegations with thin factual underpinnings.  They present four arguments for recusal:[4]

(1) Judge Crabtree's erroneous rulings favor defendants, Doc. 91 at 2 (referring to ruling in Doc. 54 indirectly and to ruling in Doc. 77 indirectly);

(2) Judge Crabtree's former law firm serves as defense counsel, creating a conflict of interest, *id.* at 1; Doc. 94 at 1;

(3) Judge Crabtree has deprived plaintiffs of their constitutional rights, Doc. 91 at 1–2;

(4) Judge Crabtree's status as a member of the Bar raises concerns of "collusion and systemic bias" with defense counsel, *id.* at 2–3.

Note the only *facts* plaintiffs allege:  two unfavorable rulings and that the undersigned judge practiced law at Stinson LLP over a decade ago.  Everything else plaintiffs assert consists of no more than "conclusions, rumors, beliefs, [or] opinions."  *Glass*, 849 F.2d at 1267.  As a result, many of plaintiffs' arguments lack "the necessary factual predicate for any meaningful

---

[4]     The court just lists arguments about the undersigned.  It doesn't evaluate arguments directed at Magistrate Judge Severson or her rulings.  *See above* Note 3.  The magistrate judge already has addressed those arguments.

review[.]" *United States v. Cooley*, 1 F.3d 985, 995 (10th Cir. 1993).[5]  Start with the

unfavorable-rulings argument.

### 1.    Unfavorable Rulings

Plaintiffs argue the court's rulings have favored defendants, inconsistently applied

procedural rules, and ignored "clear precedent" supporting plaintiffs' positions on arbitration-

related issues.  *See* Doc. 91 at 2 (discussing court's ruling on CarMax's Motion for Extension of

Time to File Answer and plaintiffs' Motions for Default Judgment, as well as Order staying

response deadlines); Doc. 94 at 1–2 (discussing Order staying response deadlines).  "'[J]udicial

rulings alone almost never constitute a valid basis for a bias or partiality motion.'"  *Escalante*,

2024 WL 459837, at *1 (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)) (evaluating

§ 144 motion); *see also Preston v. CitiMortgage*, 522 F. App'x 426, 428 (10th Cir. 2013) (citing

same quote from *Liteky* on § 455(a) motion).  The "rarest circumstances evidence the degree of

favoritism or antagonism required . . . when no extrajudicial source is involved."  *Liteky*, 510

U.S. at 555.  And "ordinary [administration] efforts . . . remain immune."  *Id.* at 556; *see also*

*United States v. Nickl*, 427 F.3d 1286, 1298 (10th Cir. 2005) ("Ordinarily, when a judge's words

or actions are motivated by events originating within the context of judicial proceedings, they are

insulated from charges of bias.").

Even if the court were to accept plaintiffs' characterization of its rulings, two allegedly

unfavorable and legally flawed rulings don't show the requisite "degree of favoritism" required

under either § 144 or § 455(a).  *Liteky*, 510 U.S. at 555; *Gabriel v. Trans Am Trucking Co.*, No.

22-2126-JWB, 2022 WL 1801092, at *2 (D. Kan. June 2, 2022) ("[W]hen . . . the movant does

---

[5]    The court thus rejects plaintiffs' arguments about constitutional violations and systemic bias as bases for recusal.  *Hinman*, 831 F.2d at 939 ("A judge should not recuse . . . on unsupported, irrational, or highly tenuous speculation." (citations omitted)).

not allege an extrajudicial source of bias, adverse rulings rarely evidence the degree of favoritism or antagonism required to disqualify the judge [on both § 144 and § 455(a) challenges]." (internal quotation marks and citations omitted)).  But plaintiffs suggest there's an extrajudicial source of the undersigned's alleged ire:  a decade-old affiliation with the firm representing defendant ACA.  That's up next.

### 2.    Conflict of Interest

Plaintiffs present two arguments about the undersigned's alleged conflict of interest.  *First*, a specific § 455(b)(2) challenge—which plaintiffs argue requires recusal.  Doc. 94 at 1.  *Second*, general allegations of ongoing professional relationships that "could impact [Judge Crabtree's] impartiality."  Doc. 91 at 1 (highlighting conflict of interest with Stinson LLP); Doc. 94 at 1 (alleging Judge Crabtree's "former colleagues and professional relationships remain within the firm" (emphasis omitted)).  Take, first, the § 455(b)(2) argument.

### a.    § 455(b)(2)

Plaintiffs argue the undersigned must disqualify himself "if [he's] previously worked for a law firm that is representing a party in the case."  Doc. 94 at 1 (citing 28 U.S.C. § 455(b)(2)).  But § 455(b)(2) doesn't reach that far.  Instead, it just requires recusal when the judge "served as lawyer *in the matter in controversy*" or when a "lawyer with whom [the judge] previously practiced law served *during such association* as a lawyer concerning the matter[.]"  § 455(b)(2) (emphasis added).  Neither of those bases for recusal are possible here—this matter began in 2024.  *See* Doc. 1 at 2 (Complaint filed June 2024 and alleging dispute about a contract entered in February 2024); Doc. 94 at 1 (plaintiffs explaining that the undersigned "has only been removed from Stinson LLP for approximately ten years" (emphasis omitted)).  No lawyers at

Stinson LLP could've served in the matter during the undersigned's time with the firm. § 455(b)(2) doesn't demand recusal.

Next, consider plaintiffs' general conflict of interest allegations.

### b.    General Conflict of Interest Allegations

Plaintiffs' factual allegations aren't sufficient to show bias under § 144 or that a reasonable person would question the undersigned's partiality under § 455(a).  To those ends, plaintiffs simply allege the undersigned's previous affiliation with Stinson LLP and ongoing professional relationships within the firm.  Doc. 91 at 1; Doc. 94 at 1.  Even taking plaintiffs' allegations as true, they never identify any specific relationships or allege a relationship between the undersigned and the attorneys entered in this case.  *See generally* Doc. 91; Doc. 94. Plaintiffs simply conclude, "[t]his creates a fundamental conflict of interest, as his previous professional ties could impact his impartiality."  Doc. 91 at 1 (emphasis omitted).  And they cite "procedural decisions" creating "an unmistakable pattern of favoritism toward Defendants." Doc. 94 at 1 (emphasis omitted).  Plaintiffs' summary and conclusory allegations of the undersigned's bias aren't sufficient.  *See, e.g.*, *Glass*, 849 F.2d at 1267 (explaining that "conclusions, rumors, beliefs and opinions" aren't sufficient to establish bias and prejudice under § 144).  Plaintiffs haven't shown actual bias supported by particular "identifying facts of time, place, persons, occasion, and circumstances."  *Id.* (internal quotation marks and citation omitted). They simply hang their hats on the two rulings described above.  Those rulings, even combined with the undersigned's decade-old affiliation with Stinson LLP, also wouldn't cause a reasonable person to "harbor doubts about the [undersigned's] impartiality."  *In re McCarthey*, 368 F.3d at 1269 (for § 455(a) challenge); *In re Hafen*, No. 23-cv-00230-JNP, 2023 WL 8372053, at *4 (D. Utah Dec. 4, 2023) (denying motion to recuse under § 455(a) where judge's former law firm

appeared before him and supposed bias manifested solely in an alleged "series of erroneous legal rulings").

### D.     Motions to Recuse Conclusion

At bottom, plaintiffs haven't shown the undersigned has an actual "personal bias or prejudice" against them or in favor of defendants. 28 U.S.C. § 144. And no reasonable person could question the undersigned's impartiality. 28 U.S.C. § 455(a). Plaintiffs haven't carried their heavy burden to show recusal is warranted. *In re McCarthey*, 368 F.3d at 1269 ("Disqualification under 28 U.S.C. § 144 places a substantial burden on the moving party to demonstrate that the judge is not impartial, not a burden on the judge to prove that he is impartial."); *Sperry*, 2020 WL 5057584, at *2 ("The party moving for disqualification [under § 455] bears the burden of proof." (citing *Burke v. Regalado*, 935 F.3d 960, 1054 (10th Cir. 2019))). In fact, a "'judge has as strong a duty to sit when there is no legitimate reason to recuse[.]'" *United States v. Read-Forbes*, No. 23-3238, 2024 WL 2861833, at *2 (10th Cir. June 6, 2024) (quoting *Nichols*, 71 F.3d at 351). And there's no legitimate reason to recuse here. The court thus denies plaintiffs' Motions to Recuse (Doc. 91 and Doc. 94).

It now takes up several matters involving defendants' Motion to Compel Arbitration (Doc. 44).

### III.     Matters About Arbitration (Docs. 44, 69, 72, & 86)

Several filings touch on arbitration. Plaintiffs filed two extra documents—one a Motion to Deny, the other a letter in opposition—after filing their Response (Doc. 52) to the Motion to Compel (Doc. 44). *See* Doc. 72; Doc. 86. The court, *first*, explains why it won't evaluate these filings. *Then*, the court grants as unopposed defendant CarMax's Motion to Join ACA's Motion to Compel (Doc. 69). *Finally*, the court grants the Motion to Compel Arbitration (Doc. 44).

### A.     Plaintiffs' Improper Surreplies (Doc. 72 & Doc. 86)

When a party files a motion, the opposing party may submit one response, and the movant may submit one reply.  D. Kan. Rule 7.1(c); *Taylor v. Sebelius*, 350 F. Supp. 2d 888, 900 (D. Kan. 2004).  That's generally it.  Courts typically don't allow surreplies.  *Taylor*, 350 F. Supp. 2d at 900.  And when courts do allow them, the party hoping to file a surreply must seek leave to do so.  *Id.*  Courts give leave in "'rare circumstances[,]'" like when "'a movant improperly raises new arguments in a reply.'"  *Humphries v. Williams Nat. Gas Co.*, No. 96-4196-SAC, 1998 WL 982903, at *1 (D. Kan. Sept. 23, 1998) (quoting *McShares, Inc. v. Barry*, 979 F. Supp. 1338, 1341 (D. Kan. 1997)).  These procedural requirements apply equally to pro se litigants.  *See Hernandez v. U.S. Postal Serv.*, No. 19-4002-HLT, 2020 WL 1809749, at *3 n.7 (D. Kan. Jan. 10, 2020) (construing pro se filing as surreply in opposition to motion and explaining plaintiff's "pro se status does not relieve him of the obligation to comply with the procedural rules" (citing *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)).

Here, plaintiffs responded to defendant ACA's Motion to Compel Arbitration.  *See* Doc. 52.  But plaintiffs—having the benefit of defendant ACA's reply arguments—then filed a Motion to Deny Defendants' Motion to Compel Arbitration (Doc. 72) and an Opposition to Arbitration Consideration (Doc. 86).  Plaintiffs never sought the court's leave to file a single surreply, much less two.  In plaintiffs' additional filings, they never explain why the court should allow them to file surreplies.  *See generally* Doc. 72; Doc. 86.  Plaintiffs' filings assert new arguments and add details that they failed to include in their response.  *See generally* Doc. 52 (Response arguing defendants' waived ability to enforce arbitration agreement and defendants' legal violations are inappropriately suited to arbitration); Doc. 72 (Motion to Deny challenging for first time validity of arbitration agreement and reasserting two other arguments); Doc. 86

(Opposition to Arbitration asserting new argument that court should consider whether arbitration "would truly serve the interests of justice" because defendants failed to "respond in good faith").

What's more, defendant ACA's reply brief didn't raise any new arguments. *See generally* Doc. 70. It just addressed deficiencies in plaintiffs' response and reiterated arguments raised earlier.[6] *See generally id.* Those aren't grounds for granting plaintiffs leave to file surreplies. *See Humphries*, 1998 WL 982903, at *1 (reserving leave for "rare circumstances" like raising new arguments in reply (quotation cleaned up)). And they certainly don't provide grounds to allow surreplies without leave, even for pro se plaintiffs. *See Mack v. J.M. Smuckers Co.*, 631 F. Supp. 3d 1018, 1022 (D. Kan. Sept. 29, 2022) (striking pro se plaintiff's improper surreply because court was "unaware of any circumstances, such as new arguments or new evidence advanced by defendants in their reply briefs, that would warrant filing a surreply in this case" (quotation cleaned up)), *aff'd*, 2023 WL 5217705 (10th Cir. Aug. 15, 2023). And, even if the court considered plaintiffs' surreplies, its ruling on the Motion to Compel would stay the same. *See Taylor*, 350 F. Supp. 2d at 900 n.14 (explaining result wouldn't change if court considered surreply). In sum, plaintiffs' surreply arguments don't move the needle.

The court thus declines to evaluate plaintiffs' Motion to Deny (Doc. 72) and Opposition to Arbitration Consideration (Doc. 86). Those filings are improper surreplies. Now, the court evaluates defendant CarMax's Motion to Join (Doc. 69).

---

[6]     Defendant CarMax filed a Motion to Join ACA's motion before plaintiffs filed these surreplies. Doc. 69 (Motion for Joinder filed February 25, 2025); Doc. 72 (Motion to Deny filed February 26, 2025); Doc. 86 (Opposition to Arbitration filed March 4, 2025). But even if the court wanted to construe one of these filings as a response to CarMax's motion, neither one responded to that motion specifically. Plaintiffs never argue that allowing CarMax to join ACA's motion is improper. Plaintiffs' filings simply assume both ACA and CarMax moved to compel and suggest reasons why the court should deny that motion. *See generally* Doc. 72; Doc. 86. Plaintiffs conclude the court should "ensur[e] that procedural defaults are not used as strategic maneuvers to avoid rightful adjudication." Doc. 86 at 1. The court thus declines to construe either of these filings as a response to the Motion to Join.

### B.     Defendant CarMax's Motion to Join (Doc. 69)

After entering the case, defendant CarMax moved to join defendant ACA's Motion to Compel Arbitration (Doc. 44).  *See* Doc. 69 at 1.  Plaintiffs never responded to the motion. Because plaintiffs failed to respond, the court considers and decides the motion as uncontested. D. Kan. Rule 7.1(c).  And the court grants defendant CarMax's Motion to Join.  *Id.*; *Hulett v. Olathe Med. Ctr.*, No. 24-2218-EFM-ADM, 2024 WL 4903803, at *1 (D. Kan. Nov. 27, 2024) (explaining that court "could grant . . . motion on [failure to respond] alone").  It refers to both defendants collectively, unless otherwise specified, throughout the remainder of this Order.  The court now turns to the merits of defendants' Motion to Compel Arbitration (Doc. 44).

### C.     Defendants' Motion to Compel Arbitration (Doc. 44)

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16, deems written arbitration clauses "valid, irrevocable, and enforceable[.]"  9 U.S.C. § 2.  The United States Supreme Court interprets the FAA to establish a strong federal policy favoring arbitration.  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) ("[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration. . . . [A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]").  And the Court thus requires "liberal reading of arbitration agreements[.]"  *Id.* at 22 n.27.

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [they have] not agreed so to submit."  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal quotation marks and citation omitted).  The court generally decides whether the parties agreed to arbitrate their controversy.  *Id.* ("The question whether the parties have submitted a particular dispute to arbitration is an issue for judicial determination[.]" (quotation cleaned up)).  But "when parties agree that an arbitrator should

decide arbitrability, they delegate to an arbitrator all threshold questions concerning arbitrability—including 'whether their agreement covers a particular controversy.'" *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1280 (10th Cir. 2017) (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 69 (2010)). The court won't assume the parties agreed to arbitrate arbitrability "unless there is clear and unmistakable evidence that they did so." *Id.* at 1281 (quotation cleaned up).

Here, defendants argue that the parties formed a valid arbitration agreement and plaintiffs' claims fall plainly within its scope. Doc. 44 at 5–7. But, they also assert, the parties delegated questions of the arbitration agreement's "validity and scope" to the arbitrator. *Id.* at 7. Essentially, they argue the agreement has a delegation clause—so the arbitrator must decide the arbitrability of the dispute. Plaintiffs respond, arguing defendants can't enforce an arbitration agreement that they breached. Doc. 52 at 1. What's more, plaintiffs argue, defendants violated a host of laws, making arbitration an "inappropriate venue" to resolve the issues. *Id.* at 2–3.

Based on these arguments, the court's task is two-fold. *First*, the court must decide whether the parties formed an arbitration agreement. *Munoz v. Conduent State & Loc. Sols., Inc.*, No. 24-2044, 2025 WL 799482, at *5 (10th Cir. Mar. 13, 2025) ("The first question— whether parties agreed to arbitrate—must always be decided by a court." (quotation cleaned up)). *Then*, the court must decide whether the parties clearly and unmistakably delegated arbitrability questions to the arbitrator. *Id.* at *6. If so, the court must enforce the delegation clause— sending the parties to arbitration. *See Fedor v. United Healthcare, Inc.*, 976 F.3d 1100, 1104 (10th Cir. 2020) ("Courts must therefore first determine whether an arbitration agreement was indeed formed before enforcing a delegation clause therein.").

The court assesses each of those questions, in turn, below. It concludes the parties formed an arbitration agreement and that the arbitrator must decide the arbitrability questions presented here. The court thus grants defendants' Motion to Compel Arbitration (Doc. 44).

### 1.     Agreement to Arbitrate

Defendants attached the arbitration agreement as an exhibit to their Motion to Compel. *See* Doc. 44-2 at 4 (Def. Ex. A-1). Plaintiffs' retail installment contract with CarMax included that provision.[7] *See generally id.* The arbitration agreement appears on a page all its own, with plaintiffs' initials at the bottom of that page. *Id.* at 4. Plaintiffs' Response never argues that the parties didn't form an arbitration agreement. *See generally* Doc. 52; *see also* Doc. 70 at 1 (defendant ACA explaining that "Plaintiffs do not deny that . . . they agreed to arbitrate"). In fact, plaintiffs' Response suggests the parties properly formed an arbitration agreement. *See* Doc. 52 at 1. Plaintiffs argue that ACA can't enforce the arbitration provisions because it breached those provisions. *Id.* (asserting waiver argument and explaining "[b]y acting outside the arbitration agreement, ACA has voided its ability to compel arbitration and must instead address Plaintiffs' claims in this Court."). So, absent a formational challenge to the arbitration provisions,[8] the court proceeds to the next question: Who has the authority to decide the remaining arbitrability questions—the court or an arbitrator?

---

[7]     In the contract, CarMax assigned its rights to ACA. *See* Doc. 44-2 at 5 (assignment provision). And the arbitration provision applies to the "Seller, including . . . anyone to whom the Seller transfer its rights under the Contract." *Id.* at 4. ACA points to the assignment clause in its motion. Doc. 44 at 1. Plaintiffs don't respond to or challenge whether ACA, like CarMax, is bound to the contract.

[8]     One of plaintiffs' new arguments—asserted in their improper surreply—is that they never mutually agreed to arbitrate. Doc. 72 at 2. As established, the court isn't evaluating this document. But even if it did, it wouldn't change the outcome.

Plaintiffs haven't provided any evidence to support their conclusory arguments. "When the parties disagree whether an agreement to arbitrate exists," the movant must provide evidence of a valid agreement. *Williams v. Staffmark Invest. LLC*, No. 21-2456-EFM-GEB, 2022 WL 910859, at *2 (D. Kan. Mar. 29, 2022) (citing *Hancock v. Am. Tel. & Tel. Co., Inc.*, 701 F.3d 1248, 1261 (10th Cir. 2012)). If the

### 2.     Arbitrability Decisionmaker

Defendants initially argued that "[t]o the extent that Plaintiffs challenge the validity and scope of the Arbitration Agreement, the agreement expressly provides that those issues are to be decided by the arbitrator[.]"  Doc. 44 at 7.  Plaintiffs functionally asserted two defenses to arbitrability in response:  *First*, they argue that ACA violated several laws and defendants' "cannot now seek arbitration for a dispute that arises from [their] own failure to comply with legal requirements."  Doc. 52 at 2.  They list a number of alleged violations, further arguing that "arbitration is an inappropriate venue for resolving these legal violations[.]"  *Id.* at 2–3 (arguing ACA violated UCC provisions, the Fair Credit Reporting Act, and several other laws).[9]  *Second*, plaintiffs assert that ACA waived the ability to enforce the arbitration provision by breaching it themselves.  *Id.* at 1.  Defendants replied to both arguments on their merits and also explained "scope was properly delegated to the arbitrator."  Doc. 70 at 1; s*ee generally id.*  Defendants never explain whether the court or the arbitrator should decide plaintiffs' specific defenses to arbitration.  Nonetheless, the court concludes these questions belong to the arbitrator, as it explains below.

---

movant does so, the burden shifts to the nonmovant "to show a genuine issue of material fact regarding the parties' agreement."  *Id.*

Plaintiffs argue they "never knowingly agreed to arbitration" and defendants "failed to properly disclose the arbitration clause."  Doc. 72 at 2.  The evidence defendants put forth, though, includes the arbitration provision as page 3 of the retail installment contract.  Doc. 44-2 at 4.  And that page—just like all the others—bears plaintiffs' initials.  *Id.*  Under Kansas law, "a person who signs a written contract is bound by its terms regardless of his or her failure to read and understand its terms."  *Rosenbaum v. Tex. Energies, Inc.*, 736 P.2d 888, 892 (Kan. 1987).  Plaintiffs never present evidence or argument to the contrary—just conclusory statements in their improper surreply.  Those don't satisfy plaintiffs' burden to show a genuine issue of material fact.  Even if it considered plaintiffs' improper new argument, the court concludes the parties entered an arbitration agreement.

[9]      Plaintiffs' first argument is a bit unclear.  But the court construes it as disputing the scope of the arbitration agreement, or otherwise claiming waiver by conduct inconsistent with arbitration.

For context, start with a primer:  The Supreme Court has established two presumptions about arbitrability questions.  Procedural questions presumptively are for the arbitrator to decide.  *Howsam*, 537 U.S. at 84.  And substantive gateway questions of arbitrability presumptively are for the court to decide.  *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 n.2 (2013) (reciting rule that "question[s] of arbitrability" that "'include certain gateway matters' . . . are presumptively for courts to decide" (quoting *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003))).  The court needn't resolve whether plaintiffs' defenses to arbitrability are procedural or substantive here.  Either way the court slices it, the arbitrator must resolve these issues.  That's so, the court concludes, because the parties clearly and unmistakably have manifested an intent to delegate all substantive arbitrability questions to the arbitrator.

### a.    Clear and Unmistakable Evidence

Parties can delegate gateway questions to the arbitrator by "clearly and unmistakably" evidencing their intent to do so.  *See, e.g.*, *Belnap*, 844 F.3d at 1287 (citing *Rent-A-Center*, 561 U.S. at 66).  The "clear and unmistakable" requirement "pertains to the parties' manifestation of intent, not the agreement's validity."  *Rent-A-Center*, 561 U.S. at 69 n.1 (emphasis omitted).  Delegation clauses can provide clear and unmistakable evidence that the parties agreed to leave questions of arbitrability to the arbitrator.  *Wakeman v. Uber Techs., Inc.*, 721 F. Supp. 3d 1191, 1197 (D. Kan. 2024) (finding delegation clause clearly and unmistakably evidenced intent to arbitrate arbitrability where clause provided arbitrator should determine "all threshold arbitrability issues"); *Chickasaw Nation v. Caremark PHC, LLC*, No. CIV-20-00488-PRW, 2022 WL 4624694, at *3 (E.D. Okla. Sept. 30, 2022) (concluding clause requiring arbitrator decide "all questions of arbitrability" was clear and unmistakable evidence (emphasis omitted)).

The court concludes the delegation clause here clearly and unmistakably evinces the parties' intent to arbitrate arbitrability, including the scope and waiver arguments plaintiffs pose. Here, the retail installment contract's arbitration provision provides:  "Any claim will be decided by arbitration and not in court[.]"  Doc. 44-2 at 4.  Here, the parties' agreement with one another defines "claim" to include "[d]isputes about the validity, enforceability, arbitrability or scope of this Arbitration Provision or this Contract[.]"  *Id.*  Plaintiffs' first argument against arbitration— that defendants' legal violations are ill-suited for arbitration—is a scope issue under the delegation clause.  *Belnap*, 844 F.3d at 1284 (concluding "question of whether claims fall within scope of the agreement to arbitrate" was question of arbitrability the arbitrator must resolve because parties delegated arbitrability questions).  And plaintiffs' second argument against arbitration—asserting that defendants waived their ability to enforce the arbitration agreement through inconsistent conduct—fits a similar bill.  *See Goldgroup Res., Inc. v. DynaResource de Mexico, S.A. de C.V.*, 994 F.3d 1181, 1191 (10th Cir. 2021) (concluding incorporation of arbitration rule delegating "objections to the existence, scope, or validity" to arbitrator "constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability issues, including the issue of waiver" (quotation cleaned up)).  The parties here agreed to arbitrate all questions about "validity, enforceability, arbitrability or scope[.]"  Doc. 44-2 at 4. That's clear and unmistakable evidence that the arbitrator, not the court, must decide the scope and waiver issues.

In sum, the parties delegated arbitrability questions to the arbitrator.  So, it's the arbitrator—not the court—who must resolve plaintiffs' defenses to arbitration.  *See Munoz*, 2025 WL 799482, at *6 ("[O]nce a court is satisfied that (1) the parties formed an arbitration agreement (2) containing clear and unmistakable evidence that the parties agreed to arbitrate

arbitrability, questions about the validity or scope of the arbitration contract . . . are for the arbitrator."); *Casa Arena Blanca LLC v. Rainwater*, No. 21-2037, 2022 WL 839800, at \*5 (10th Cir. Mar. 22, 2022) (finding district court erred by answering more questions after concluding parties entered arbitration agreement with enforceable delegation clause).

### 3.     Stay & Administrative Closure

Because the parties formed an arbitration agreement, and clearly and unmistakably agreed to arbitrate arbitrability questions, the court grants the Motion to Compel Arbitration (Doc. 44).  It also stays and administratively closes this case pending the result of arbitration proceedings.  *See* 9 U.S.C. § 3 ("[U]pon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, [the court] shall on application of one of the parties stay the trial of the action until such arbitration has been had[.]"); *Wakeman*, 721 F. Supp. 3d at 1197 (explaining when "a motion to compel is granted, a court shall stay trial proceedings for the parties arbitrating until they conclude arbitration" in case with enforceable delegation clause); *Patterson v. Santini*, 631 F. App'x 531, 534 (10th Cir. 2015) (explaining administrative closure is "the practical equivalent of a stay" and "allows district courts to remove from their pending cases suits which are temporarily active elsewhere (such as before an arbitration panel) or stayed (such as where bankruptcy is pending)" (quotation cleaned up)). Administratively closing the case maintains the case on the docket so that "it may be reopened upon request of the parties or on the court's own motion."  *Patterson*, 631 F. App'x at 534; *see also Quinn v. CGR*, 828 F.2d 1463, 1465 (10th Cir. 1987) (referencing district court's administrative closure of case pending arbitration); *Biglow v. Dell Techs., Inc.*, No. 20-2563-KHV-BGS, ECF 34 (D. Kan. June 7, 2023) (administratively closing case that was previously stayed pending arbitration, subject to reopening for good cause shown); *Archuleta v. Triad Nat.*

*Sec., LLC*, No. 21-cv-01030-KWR-SCY, 2021 WL 5177474, at *8 (D.N.M. Nov. 8, 2021)

(staying and administratively closing case pending arbitration subject to reopening); *SGS, LLC v.*

*Land-Mark Prof. Surveying, Inc.*, No. CIV-18-0691-HE, 2019 WL 5191884, at *2 (W.D. Okla.

Feb. 12, 2019) (administratively closing case pending mediation subject to reopening if

necessary to "final resolution of the controversy").

## IV.    Conclusion

At bottom, plaintiffs haven't provided grounds for the undersigned's recusal under either

28 U.S.C. §§ 144 or 455.  The court denies the first of plaintiffs' recusal motions in part, limiting

that conclusion to the part of the recusal motion that applies to the undersigned.  *See* Doc. 91.  It

likewise denies the second recusal motion.  *See* Doc. 94.  The court also concludes the parties

must arbitrate their many disputes.  It denies plaintiffs' Motion to Deny Defendants' Motion to

Compel (Doc. 72) as an improper surreply.  And the court declined to evaluate plaintiffs'

Opposition to Arbitration Consideration (Doc. 86) for the same reason.  The court grants

defendant CarMax's Motion to Join (Doc. 69).  And it grants defendants' Motion to Compel

Arbitration (Doc. 44).  The court stays and administratively closes this case pending the

arbitration result.  Any party may move the court to reopen the case for good cause shown after

those proceedings conclude.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs' Motion to

Recuse District Judge Daniel D. Crabtree and Magistrate Judge Brooks G. Severson (Doc. 91) is

denied in part, as explained in this Order.

**IT IS FURTHER ORDERED THAT** plaintiffs' Motion for Recusal of Judge Daniel D.

Crabtree Due to Conflict of Interest (Doc. 94) is denied.

**IT IS FURTHER ORDERED THAT** plaintiffs' Renewed Objection to Magistrate

Judge's Self-Ruling on Motion to Recuse (Doc. 105) is denied.

**IT IS FURTHER ORDERED THAT** plaintiffs' Motion to Deny Defendants' Motion to Compel Arbitration (Doc. 72) is denied.

**IT IS FURTHER ORDERED THAT** defendant CarMax's Motion to Join Defendant American Credit Acceptance's Motion to Compel Arbitration (Doc. 69) is granted.

**IT IS FURTHER ORDERED THAT** defendants' Motion to Compel Arbitration (Doc. 44) is granted.

**IT IS FURTHER ORDERED THAT** this matter is stayed pending arbitration. The court directs the Clerk of the Court to administratively close the case.

**IT IS SO ORDERED.**

**Dated this 8th day of April, 2025, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**